# IN THE COURT OF APPEALS OF IOWA

No. 25-0773
Filed December 3, 2025

IN THE INTEREST OF A.B.,
Minor Child,

M.B., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Bremer County, Peter B. Newell,

Judge.


        A mother appeals the termination of her parental rights to her child under

Iowa Code section 232.116(1)(f) (2025). **AFFIRMED.**


        John Bishop, Cedar Rapids, and Elizabeth M. Wayne (until withdrawal) of

Papenheim Law Office, Parkersburg, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Joseph G. Martin, Cedar Rapids, attorney and guardian ad litem for minor

child.


        Considered without oral argument by Tabor, C.J., and Badding and Sandy,

JJ.

**SANDY, Judge.**

The juvenile court terminated the parental rights of the mother of a child born in 2014. The mother appeals. She challenges the statutory grounds supporting termination, the determination that termination is in the child's best interests, and the finding that an exception to termination did not apply. We affirm.

## I. Background Facts and Proceedings.

A.B. was born in 2014 to the mother and an unknown father. The Iowa Department of Health and Human Services (HHS) became involved with the family after the mother was arrested for driving under the influence and possession of methamphetamine in September 2023. After HHS investigated concerns regarding the mother's mental health,[1] substance use, and her inability to take care of the child, the State filed a petition for the court to adjudicate A.B. a child in need of assistance (CINA) in October. The child was adjudicated a CINA in January 2024 and placed with the child's maternal grandmother and step-grandfather, where the child continues to reside.

Throughout the proceedings, the mother has struggled to maintain her sobriety. Although the mother has provided some urinalysis, and many of the tests have been negative, she has continued to self-report drug use throughout the case. The mother reported using methamphetamine the month before the termination trial. She has also refused to participate in hair-stat testing or drug-sweat-patch testing throughout the proceedings.

---

[1] Prior to any proceedings in this case, the mother had been committed for mental health issues in July 2023.

Although the mother has maintained continuous visits with the child, she has not progressed beyond supervised visits to semi-supervised, unsupervised, or overnight visits. At trial, the HHS social worker on this case, Jessica Suhr, testified that the mother's residence had bare walls with no drywall. Suhr also testified that the floors were unfinished, and that the mother relied on space heaters for warmth in the winter. The mother testified, however, that she had a furnace installed. The mother was unemployed at the time of the trial, and HHS described her residence as barely sufficient. She does not have her driver's license and was not participating in any substance-use or mental-health treatment at the time of trial.

In April 2025, the juvenile court entered an order terminating the mother's parental rights under Iowa Code section 232.116(1)(f) (2025).[2]

## II.  Standard of Review

We review juvenile court orders terminating parental rights de novo. *In re J.V.*, 13 N.W.3d 595, 603 (Iowa 2024). We use a three-step process to determine whether a statutory ground has been established, if the termination is in the child's best interest, and if any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

## III. Analysis.

### A.  Grounds for Termination

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f). Section 232.116(1)(f) permits termination upon clear and convincing evidence that: (1) "[t]he child is four years of age or older"; (2) "[t]he

---

[2] The juvenile court also terminated the parental rights to any putative fathers. No putative fathers have filed a notice of appeal.

4

child has been adjudicated a child in need of assistance pursuant to section 232.96"; (3) "[t]he child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days"; and (4) "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." Our supreme court has interpreted the phrase "at the present time" to mean at the time of the termination trial. *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018).

The mother challenges only the fourth element. She argues that she had stable housing and that regular visits occurred at her residence safely.[3] She further argues that her participation in services with Pathways and her good familial support show the child can return to her custody. We applaud the mother for making best efforts to maintain housing and her work with Pathways. But in the end, we agree that it is insufficient to alleviate all of the safety concerns that still exist.

At the termination trial, Suhr testified that she did not believe the mother was able to safely take the child into her custody at the time of trial. Suhr also testified that she did not believe the mother has been able to meaningfully address her substance abuse issues. This is exemplified by the mother's refusal to participate in hair stat or patch drug testing, as well as her admission she had used methamphetamine the month before the trial. The mother has a history of using

---

[3] The mother did admit in her petition that her residence "needed some work."

methamphetamine and has struggled to maintain sobriety. Although she has participated in some urinalysis testing, the mother's refusal to fully cooperate with drug testing services and inability to progress beyond fully supervised visits with the child give us pause. The trial testimony indicates that she has no real plan to reach and maintain sobriety. She simply testified that if she got her child back, she "would never touch [methamphetamine]. [She] would have no reason." We cannot simply take the mother's word that she will maintain her sobriety when she has continued to refuse drug testing, was not participating in substance-use treatment services at trial, and admitted to using methamphetamine the month before the termination trial.

The juvenile court properly found the grounds for termination under Iowa Code section 232.116(1)(f) were met.

## B. Best Interests

The mother also challenges the juvenile court's ruling that the termination of her parental rights was in the best interests of the child. We must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Our analysis considers the child's long-term and immediate interests. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020). This requires us to look at what the future may hold for the child if they are returned to the parents. *Id*. We may consider a parent's past performance as it can help predict the quality of care the parent is able to provide in the future. *Id*.

We conclude that termination is in the child's best interests.  In its analysis, the juvenile court reasoned: "[the mother] has, however, been unable or unwilling to address the issues that resulted in [the child] being placed outside her care. [The mother] cannot safely care for her son until she addresses her mental health and substance abuse issues."  We agree.  Given that the mother has been unable or unwilling to address these concerns, the child's current placement with his grandparents is the best placement for his short and long-term nurturing, growth, health, and needs.  The child's grandparents have become a licensed foster home and are willing to adopt the child.  Suhr testified that the grandparents get the child to school, make sure he is fed and receiving medical attention, and provide him with a "suitable living environment."  Suhr testified that the child has bonded with his grandparents.  The child's grandparents have shown that they can provide a safe, stable, and nurturing home.

We cannot deprive a child permanency simply because we hope that "someday a parent will learn to be a parent and be able to provide a stable home for the child."  *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).  This is all the more true considering that the child's grandparents are ready, willing, and able to adopt the child and provide for his short- and long-term interests.  Termination is in the best interests of the child.

### C.  Permissive Exception

The mother argues that her closeness and bond with the child should preclude termination under section 232.116(3)(c).  Our consideration focuses on whether termination will disadvantage the child and whether the disadvantage

overcomes the parent's inability to provide for the child's developing needs.  *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

We have no doubt the mother loves her child.  However, love is not enough to warrant our application of the exception.  *Id*.  The mother's recent drug use, unwillingness to fully cooperate with drug testing, failure to meaningfully participate in substance abuse treatment, and inability to make progress past fully supervised visits all indicate that any disadvantage termination will cause does not overcome the mother's inability to provide for the child's developing needs.  *Id*.  We decline to apply the permissive exception.

**AFFIRMED.**